BEFORE THE THIRD DIVISION, AUGUST 13, 1951

No. 55813.—Cheerio Toys & Games, Inc. v. United States, petition 6764–R (Buffalo).

CLINE, Judge: This is a petition for the remission of additional duties accruing under section 489 of the Tariff Act of 1930 due to undervaluation of merchandise.

The merchandise consisted of wooden toys, referred to as tops or Yo-yos, exported from Canada on October 31, 1946, and entered at Buffalo, N. Y., on November 6, 1946. The consular invoice, certified November 1, 1946, shows a price of $6.14 per gross, and entry was made at that price plus 8 per centum for Canadian sales tax. The merchandise was appraised on January 22, 1948, at $1.08 per dozen, net, packed, sales tax included.

An appeal for reappraisement was filed and submitted under a stipulation to the effect that the value at which the merchandise was freely offered for export

to the United States was $1 per dozen, net packed. *Carey & Skinner, Inc., a/c Cheerio Toys & Games, Ltd.* v. *United States*, 23 Cust. Ct. 265, Reap. Dec. 7729.

At the trial herein, Irwin Duviner testified that he was treasurer of Cheerio Toys & Games, Inc., the petitioner herein (hereinafter called the petitioner), and was general manager of Cheerio Toys & Games, Ltd., of Toronto, Canada (hereinafter called the Toronto company); that both companies purchased the type of merchandise involved herein from Kitchener Button Industries, Ltd. (hereinafter called Kitchener) in Canada; that the price paid the manufacturer was $6.14 per gross; that the Toronto company sold the merchandise to Canadian buyers at $1 per dozen plus the 8 per centum sales tax which was in effect in Canada; that in selling the merchandise the Toronto company employed 10 or 15 men who put on various demonstrations and gave away advertising matter and prizes; that he believed the appraised value of $1 per dozen did not properly represent the dutiable value of the merchandise because the sale to the petitioner was on the same basis as a purchase by the Toronto company from Kitchener; that it involved no sales promotion, prizes, or premiums; that the usual wholesale quantity involved in a purchase from Kitchener was 50 or 60 gross, while the usual wholesale quantity involved in sales to Canadian buyers was 6 dozen to 48 dozen; that there are no manufacturers of similar merchandise in Canada; that there are no other Canadian buyers of similar merchandise from Kitchener; that it was understood that his firm would buy the entire output of Kitchener.

On cross-examination, Mr. Duviner testified that he was familiar with the price at which the Toronto company sold these Yo-yos in Canada; that at the time of importation, he knew the Toronto company sold this merchandise for home consumption in Canada; that shortly after making entry he had a conversation with Mr. Cronin, the examiner at the port of Buffalo; that he told Mr. Cronin that his company sold the same merchandise in Canada; that he did not remember whether Mr. Cronin asked the price at which it was sold in Canada or whether he gave him such price.

Vincent J. Cronin, examiner at the port of Buffalo, testified that he told the petitioner's customs broker, Mr. Carey, Jr., that he believed the entered value of the involved merchandise was too low; that Mr. Carey said he would attempt to secure information but he never gave him any; that he subsequently had a conversation with Mr. Duviner; that Mr. Duviner said he did not feel the resale price in Canada had any bearing on the importation; that he refused to state the price at which the merchandise was sold for home consumption in Canada; that the witness subsequently ascertained such price through a foreign investigation; that the report of such investigation was his only source of information as to the value of this merchandise; that the report indicates that the Toronto company did not object to giving information at a later time.

Said report, made by A. A. McPhetres, acting Treasury attaché, and dated October 21, 1947, was received in evidence as respondent's exhibit 1. It is stated therein that Mr. Gamble of Kitchener Button Industries, Ltd., said that the merchandise was not freely offered to all purchasers for exportation to the United States; that this sale was made to enable the new concern (petitioner) to have the Yo-yo to distribute while awaiting production by an American manufacturer; that all sales in Canada are made to the Toronto company. The acting Treasury attaché also reported an interview with Mr. Duviner at the office of the Toronto company at which time Mr. Duviner stated that the Yo-yos were freely offered to all purchasers at a price of $1.08 per dozen to chain and retail stores or $12.60 per gross to wholesale stores or jobbers.

From this record it appears that at the time of entry Mr. Duviner, representing the petitioner, believed that the purchase price from Kitchener represented the proper dutiable value of the merchandise and therefore refused to disclose to

customs officials the price at which the merchandise was sold by the Toronto company for home consumption in Canada. This information was not given to customs authorities until an investigation was made almost a year after entry.

A somewhat similar state of facts existed in *Sandvik Saw & Tool Corp.* v. *United States*, 14 Cust. Ct. 226, Abstract 50081. There, the exporter and the importer were affiliated firms and the president of the Canadian exporter was also president of the petitioner. The Canadian exporter purchased the goods from the manufacturer at $5 per dozen and shipped them to the importer. It also appeared that the Canadian exporter purchased identical merchandise from the manufacturer and resold at wholesale in the Canadian market at $6.60 per dozen, plus 8 per centum sales tax, and that the exporter was the only purchaser to whom the articles were sold at $5 per dozen. The court held that the petitioner was chargeable with knowledge of the market value in Canada; that a duty rested upon it to obtain the correct value and disclose all information in its possession; and that the facts were such as to put the petitioner on inquiry as to whether the purchase price paid to the manufacturer was the correct dutiable value. The petition was denied.

In the instant case the petitioner had knowledge of the market value in Canada but did not disclose this information to customs officials, although requested to do so. Petitioner's broker was advised that the entered value was too low but no information was given to customs officials until an investigation was made. It was the duty of the importer when it made entry to give customs officials all the information which it possessed as to the dutiable value of the goods. *National Biscuit Co.* v. *United States*, 20 C. C. P. A. (Customs) 395, T. D. 46187; *C. Bruce Austin, Agent, Robert Reiner, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 211, T. D. 46731; *Ringling Bros., Barnum & Bailey Combined Shows, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 191, C. A. D. 272. What was done subsequent to entry by way of giving information to Acting Treasury Attaché McPhetres is of no moment as far as the issue here is concerned. *Stan Newcomb and Barbara Todd* v. *United States*, 37 C. C. P. A. (Customs) 18, C. A. D. 413; *Frank Alvarez* v. *United States*, 24 Cust. Ct. 303, C. D. 1252.

On the record herein, we are unable to conclude that petitioner has met the burden of showing by satisfactory evidence that, in making entry, a full and candid disclosure of all facts in its possession bearing upon the value of the imported merchandise was made to customs officials. Therefore, the petition is denied. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *United States* v. *Antilla Trading Co.*, 26 C. C. P. A. (Customs) 256, C. A. D. 25. Judgment will be rendered accordingly.